# EDWARD S. WILSON

*v.*

# ALEX. L. BYERS *et al.*

1.  MISTAKE—*correcting a patent for land entered.*  Where a party en-
tered a quarter of land in township 4 north of a base-line, and, being
unable to complete the payment, attempted to relinquish the east half
thereof, but, by mistake, the quarter was described as in township 4 south,
and a patent was issued to his assignee for the west half of the tract so
entered, describing it as in township 4 south, instead of 4 north, and pos-
session was taken, at the time, of the right tract, and continued until it
was entered and purchased of the United States by the defendant, it was
*held,* on bill filed to correct the mistake, etc., that the complainant hold-
ing under the original purchaser was entitled to have the mistake cor-
rected, and compel the defendant to convey the legal title to them.

2.  SAME—*must be mutual.*  Where a mistake is alleged in the patent
from the United States for a tract of land, it is not sufficient to show a
mistake in the application of the patentee, but it must be shown that the
mistake was mutual, and that the land officers, in selling, intended to
have sold the tract claimed.

3.  LACHES—*not imputed to one in peaceable possession.  Laches* can not
be imputed to one in the peaceable possession of land, for delay in resort-
ing to a court of equity to correct a mistake in the description of the
premises in any of the conveyances through which he deduces title.   His
possession is notice to the world of his equitable rights, and he need not
assert them until he may find occasion to do so.

4. TRUST—*when party acquiring legal title will be declared a trustee for the equitable owner.* Where a certain tract of land is in fact purchased of the United States, but the same is misdescribed in the patent issued therefor, and a party, having notice by actual possession of those claiming under the purchaser, acquires the legal title to the land from the government, it will be held in fraud of the rights of the equitable owners, and he will be regarded as holding the legal title in trust for them.

APPEAL from the Circuit Court of Jasper county; the Hon. JAMES C. ALLEN, Judge, presiding.

Messrs. WILSON & HUTCHINSON, for the appellant.

Messrs. ROBINSON, KNAPP & SHUTT, and Mr. FINNEY D. PRESTON, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The bill in chancery in this case charged that, about April 20, 1820, one David Rawlings applied at the Shawneetown land office, in this State, to enter the whole of the south-east quarter of section 34, township 4 north of the base-line, range 10 east of the third principal meridian, and paid the partial payment thereon then permitted by law; that afterwards, being unable to pay for the whole of said tract, he relinquished to the United States the east half of the quarter section, retaining the west half; that he assigned his certificate of entry to one James Elliott, who completed the payment for said west half, received a certificate of purchase therefor, and which passed into a patent from the United States to James Elliott, as assignee of David Rawlings, in which patent the land is described as being in township number 4 *south*, instead of *north* of the base-line; that Elliott afterward sold and conveyed the tract to one Thomas W. Lilley, describing correctly in the deed the land as the west half of the south-east quarter of section 34, township 4 *north*, range 10 east, etc.; that in 1841, Lilley platted part of this tract in town lots, which are now part of the town of Olney, and sold and conveyed several of the lots to the complain-

ants; that in February, 1871, Edward S. Wilson, the defendant. procured patents from the United States to said west half of south-east quarter of section 34, township 4 north, range 10 east, etc., and claims to own the same; that the patent of Wilson constitutes a cloud on complainants' title, and prays that Wilson be ordered to convey to them, etc.

The court below, on hearing upon proofs, decreed the relief prayed, and defendant appealed from the decree.

It is conceded by appellant's counsel that the entry of and payment for public land give better title, in equity, than a subsequent patent to another person. The important question in the case, then, and the only real subject of dispute, is one of fact: what tract of land did David Rawlings buy, or intend to buy, of the United States; and, also, what tract did the United States sell to him?

The cause was heard below upon an agreed statement of facts, in addition to the documentary testimony, and the depositions of Alexander and Keefer, former registers of the Palestine and Springfield land offices.

It appears that the original application by David Rawlings to enter land April 11, 1820, and the certificate of such entry then issued to him at the Shawneetown land office, are lost; that Michael Rawlings, father of David Rawlings, settled with his family on the west half south-east quarter section 34, township 4 north, range 10 east, third principal meridian, in the fall of 1820; built a house thereon and resided in it, and inclosed part of the tract. His son David lived with him in his family. They lived there till the spring of 1823, when Michael Rawlings sold said tract to James Elliott, who moved into the house and took possession in the fall of 1823, and made additional improvements thereon. Elliott lived there until 1837, when he sold and conveyed the said tract to Thomas W. Lilley, describing it correctly in his deed. Lilley took possession and inclosed the whole tract, and lived on the same until his death, in 1869. He platted part of it as an addition to Olney, and many of the lots had been sold by him, among which

are those claimed by complainants. Lilley's widow continues to occupy part of said land as her homestead. Since their purchase, complainants have been in actual possession of their lots, and have erected buildings on them. Clark D. Stillwell, on September 24, 1854, obtained a certificate of entry, at the Shawneetown land office, for the north-west quarter of south-east quarter of section 34, township 4 *south*, range 10 east, third principal meridian, and went on the same in 1855, made some improvements, and has since sold and conveyed said tract to Joseph P. Stillwell. This certificate was, however, cancelled June 12, 1855, by the Commissioner of the General Land Office, as interfering with a previous sale of the west half of the quarter to David Rawlings, April 11, 1820.

White county, in which the west half south-east quarter 34, 4 *south*, 10 east, third principal meridian, is situated, has sold and conveyed to Joseph P. Stillwell the south-west quarter of south-east quarter 34, 4 *south*, 10 east, third principal meridian, it having been previously vested in the county as swamp-land, under the act of Congress granting the swamp-lands; since which sale by the county, both said forties in south-east quarter 34, township 4 south, have been occupied by said Stillwell and his grantees, who have improved the same.

The west half south-east quarter 34, 4 south, 10 east, third principal meridian, was wild and unoccupied land prior to Stillwell's entry, in 1855. Neither Michael Rawlings, David Rawlings nor James Elliott, ever lived on said last tract of land. or claimed title to it, or lived in White county. Edward S. Wilson, the defendant, is a lawyer of several years' practice, and has been engaged in abstracting titles to land, in Olney, and has lived there several years.

From the above recited facts, there can be no doubt what land Rawlings intended to purchase, and supposed he had purchased, and what land Elliott, as his assignee, intended to complete the purchase of, and supposed he had done so; that

it was the eighty-acre tract in 4 *north;* and that the defendant was chargeable with constructive notice of whatever equitable rights they and the complainants had thereto.

But this, of itself, is not enough. The mistake, to be relieved against, must have been mutual, and the land officers making sale of the land, as well, must have intended to sell this same tract. Rawlings might have made a mistake in his original application to enter the land, and have wrongly described it as in 4 *south;* but this original application is lost, as well as the certificate of the entry issued to him, and we have to look to the official records of the land offices for evidence upon the point.

We may first say that, in 1820, when this entry was made, the United States was selling its lands at $2 per acre, one-fourth of the purchase money being required to be paid in cash at the time of the entry, and the balance in annual payments.

We have, then, in evidence an extract from ledger D of the register's office, Shawneetown land office, where we find that on April 11, 1820, is recorded the fact that on that day "David Rawlings, of Edwards county, Illinois, bought the S. E. ¼ of sec. 34, in township No. 4 N., R. 10 E., for $320;" that on the same day he is credited, "By cash, $80." In this entry, the letter "N," after the township, is in red ink, and appears above the line of the rest of the entry. This is a suspicious circumstance, and renders it unsatisfactory what the original entry was.

We have next the following:

"RECEIVER's OFFICE, AT SHAWNEETOWN, ILL.,
"11*th April,* 1820.

"*Sundries Dr.—To sales of public lands:*

"David Rawlings, for purchase money of S. E. ¼ of sect. 34, T. 4 N., R. 10 E., 160 acres, purchased 11th April, 1820.........................................$320

"*Cash account Dr.—To sundries:*

    "To David Rawlings, for first installment of purchase money of S. E. ¼ sec. 34, T. 4 N., R. 10 E., purchased 11th April, 1820, per receipt 7048..............$80."

This is a record from journal F of the receiver's office of the Shawneetown land office, dated 11th April, 1820.

We have, then, the following:

"1820, 11th April—7048—David Rawlings—1—80—S. E. 34—4 N.—10 E.—1,60."

This extract is from a book in the register's office of said land office, marked "Registry of Receipts," and is the record kept by the register of the receipts given by the receiver, and shows that on the 11th of April, 1820, David Rawlings had presented to him for registry the receipt of the receiver for first payment of $80 for the south-east quarter of 34, township 4 north, range 10 east, 160 acres, and that said receipt was numbered 7048.

These last two entries in the receiver's and register's books are unexceptionable in appearance, there being no suspicious circumstance of alteration whatever connected with them.

The above exemplifications from the records of the Shawneetown land office constitute all the entries on any of said books relating to this tract of land, from April 11, 1820, until June 25, 1829. On the day last named, James Elliott, assignee of David Rawlings, completed the entry of Rawlings, in accordance with an act of Congress then in force, by relinquishing to the United States the east half of the quarter section —describing it, as the record shows, as in 4 *south*—and paying the balance due for the west half, and receiving therefor Shawneetown final certificate number 1150, which also describes the tract as in 4 *south*. It, however, also describes the tract as purchased by David Rawlings, April 11, 1820, and that Elliott, his assignee, has completed payment of it. The entries of the transaction in the journals of both the receiver's and register's offices of the Shawneetown land office,

   6—77TH ILL.

under date of June 25, 1829, describe the tract as in 4 *south*, and the patent to Elliott describes it as in 4 *south*. There is no doubt, from the evidence, that, by the records of the general land office, at Washington, the west half south-east quarter 34, township 4 *north*, range 10 east, third principal meridian, at this last date and afterward, appeared to be vacant. The commissioner of that office informed the register and receiver of the local office, by letter of February 11, 1870, that it so appeared, and directed them to hold the same subject to entry, etc.; but there is no exemplification in evidence of any record from the general land office except that of Elliott's relinquishment and his final certificate, number 1150. There is no evidence as to Rawlings' original certificate.

After the entry by Rawlings, April 11, 1820, the Palestine land district was created from territory of the Shawneetown land district, and the tract in 4 *north* of the base-line fell in the former district, the south line of the Palestine district being the base-line, and that line being the north boundary of the Shawneetown land district.

The Palestine land office was opened in the fall of 1820. As the entry by Rawlings was at the Shawneetown land office, and at the time this tract in 4 *north* was in that land district, Elliott had to complete the purchase at the Shawneetown office.

The plat-books and the tract-books of both these offices furnish further evidence that it was the tract in 4 *north* which Rawlings purchased, and Elliott, his assignee, completed payment for.

On the plat-book of the Shawneetown land office there is no entry of the purchase by Rawlings of the south-east quarter of this section in township 4 *south*, but, on the contrary, the first entry thereon was the noting on the north-west quarter of south-east quarter of 34, 4 *south*, of the entry of that by Clark D. Stillwell, September 2, 1854, and indicated on the plat by the figures "21,236," that being the number of Stillwell's certificate. No other entry appears on said plat-

book until, in pursuance of an order from the Commissioner of the General Land Office, the register of the Shawneetown land office was directed to make entry of approved list number 1 of swamp-lands, opposite each of said tracts, on his books, of the words, "Swamp-land, Act September 28, 1850; approved May 19, 1855, in list 1." In this list of swamp-lands are south half south-east quarter 34, 4 south, 10 east, third principal meridian, and north-east quarter south-east quarter 34, 4 south, 10 east, third principal meridian. This the register complied with, by noting on said plat-book, on said swamp-land tracts, the words, "State, Act 28th September, 1850," and also by entering on the tract-book the above words ordered to be inserted by said commissioner; and thus, with the Stillwell entry, completing the disposition of the whole quarter section *south* of the base-line.

Upon the tract-book of the Palestine land office there was the following original entry upon the plat of this tract: "W. H. S. E. 34, 4, 10, David Rawlings, S. T. Cert. 1150;" the above abbreviations standing for west half south-east quarter section 34, township 4, range 10; the letters "S. T. Cert." meaning Shawneetown certificate, and the figures 1150, the number of the final certificate under which the entry was concluded.

On the plat of the tract upon the plat-book of the Palestine land office was the following original entry: "S. T. 1150."

If the tract which Rawlings applied to enter, and Elliott concluded the entry of, were in township 4 *south* of the base-line, these entries should not appear on the books of the Palestine land office, as it only had to do with lands lying north of the base-line.

So, too, had the tract been in 4 *south*, the fact of the entry should have been noted on the plat-book of the Shawneetown land office, and said book should not have remained wholly blank respecting this quarter section until in 1854, when the entry of the northwest quarter of it by Clark D. Stillwell is

noted by the figures 21,236, and subsequently the grant of the remainder as swamp-land to the State is noted upon it.

These original entries upon the Palestine office plat and tract-books were subsequently, in 1870, at the time of Wilson's entry, erased by the deputy register of the land office at Springfield—to which latter office, in 1855 or 1856, all books and papers of all the other land offices in the State were sent, and they closed—in correction of a supposed mistake, and an entry of Wilson's purchase was made instead.

It is needless to enlarge upon the evidence. It is palpable, from the proofs furnished by the books of the Shawneetown and Palestine land offices, that the tract which the land officers intended to and did sell to Rawlings, April 11, 1820, and which they received final payment for from Elliott, Rawlings' assignee, June 25, 1829, was the west half of south-east quarter section 34, township 4 *north* of the base-line, of range 10 east of the third principal meridian, and that in Elliott's relinquishment, Shawneetown final certificate number 1150, and patent, there was a mistake made in the description of the tract, describing it as in 4 *south,* instead of 4 *north.*

It is insisted that Elliott has not paid for the tract in full, because it was in part paid for by Elliott's relinquishment of east half of south-east quarter 34, township 4 *south,* range 10 east, etc., and Elliott had no title to that; but it was the east half south-east quarter 34, township 4 *north,* etc., which was actually relinquished by Elliott, there being a mistake in describing it as in 4 *south.*

It is insisted, too, that there has been such *laches* as should bar the claim for relief.

*Laches* can not be imputed to one in the peaceable possession of land, for delay in resorting to a court of equity to correct a mistake in the description of the premises in one of the conveyances through which the title must be deduced. *Mills* v. *Lockwood,* 42 Ill. 112. The possession is notice to all, of the possessor's equitable rights, and he need to assert them only when he may find occasion to do so.

The tract was purchased by Wilson, with "Porterfield" scrip, which was worth $5 per acre, because applicable to unoffered lands; and it is insisted that it was erroneous to compel Wilson to convey to complainants the rights held by him under this scrip; that it was an appropriation of this scrip to complainants' use without consideration. But Wilson purchased the land with notice and in consequent fraud of the rights of the complainants or their grantor, and held the title which he acquired but as their trustee.

Whatever the sum he might have paid for the land, it would in nowise affect complainants' right to a conveyance of the legal title.

The decree will be affirmed.

*Decree affirmed.*