JOHN PARKER

*v.*

JAMES S. SHANNON.

*Filed at Ottawa May 13, 1891.*

1. JUDICIAL SALE—*inadequacy of price—fraud and irregularities.* An execution issued upon a judgment of $571.49 to another county, where it was levied upon four lots, worth $5000, which were sold for $20, to the attorney of the plaintiff, of which the debtor had no notice for a long time after. An *alias* execution issued for the balance due on the judgment, which the debtor paid in full and $20 over, still without notice of the sale. There was no proof that the attorney ever paid his bid of $20, or paid his client any part of the judgment, and it appeared that he concealed his purchase even from his own partner. It was not shown that proper notice of the sale was given, or that the lots were offered separately, and the certificate of sale was not recorded until after the time of redemption had expired. The sheriff's deed misrecited the term at which the judgment was recovered, and the amount thereof: *Held,* that under the circumstances the sale should be set aside.

2. While inadequacy of price, alone, may not justify a court of equity in setting aside a judicial sale, yet it will take hold of serious irregularities in the mode of sale, or of any circumstances of unfairness toward the debtor, in order to grant relief in a case where such gross inadequacy is shown to exist.

3. SAME—*notice of irregularities.* The possession of land by a debtor before the recovery of judgment against him, and the continuance of such possession after an irregular and unfair sale, for a grossly inadequate price, is notice to all persons buying from the grantee in the sheriff's deed, of the irregularities and defects in the proceedings and sale.

. 4. SAME—*recovery in ejectment—no bar to bill to set aside sale.* A recovery of the legal title to land in an action of ejectment, by one claiming under a sheriff's sale against the defendant, who is the execution debtor, is no bar to a bill filed by such debtor to have the sheriff's deed set aside on the ground of gross inadequacy of price, and irregularities and unfair conduct on the part of the officer and the purchaser, in concealing the sale, and otherwise.

5. SAME—*sheriff's deed—correction after five years.* After the time has elapsed in which the sheriff may make his deed for land sold under execution, which is five years after the expiration of the time of re—

demption, he will have no power to make a second deed correcting a former one, and adding to its recitals.

6. STATUTE OF LIMITATIONS—*in equity—against one in possession.* A statute of limitations, or rule of limitation, in equity, does not run against one in possession of real estate, but against one who is out of possession. The possession is notice of the party's rights, and he need assert them only when he may find occasion to do so.

7. NOTICE *to agent notice to principal.* Notice to an agent employed to procure a deed for land for his principal, of the fact that the grantor has no title of his own, but simply holds the legal title in trust for another, is notice to such principal.

APPEAL from the Circuit Court of DuPage county; the Hon. C. W. UPTON, Judge, presiding.

Mr. M. L. RAFTREE, for the appellant:

The levies and sale under the first execution were void. *Hamilton* v. *Quimby*, 46 Ill. 96; *Rock* v. *Haas*, 110 Ill. 528.

The second levy, being made without the knowledge or consent of the defendant in the writ, was void. The first levy could not be abandoned without defendant's consent. *Smith* v. *Hughes*, 24 Ill. 270; *Chandler* v. *Higgins*, 109 id. 602; Freeman on Executions, sec. 271, note b.

The sale being *en masse* of property susceptible of division, was void. *Phelps* v. *Conover*, 25 Ill. 309.

The property was fraudulently sacrificed, and therefore the sale was void. *Stewart* v. *Croes*, 5 Gilm. 442; *Day* v. *Graham*, 1 id. 435; *Morris* v. *Robey*, 73 Ill. 462; *Cowen* v. *Underwood*, 16 id. 22; *Ballance* v. *Loomis*, 22 id. 82; *McMullen* v. *Gable*, 47 id. 71; *Mixer* v. *Sibley*, 53 id. 75; *Roseman* v. *Miller*, 84 id. 297; *Berry* v. *Lovi*, 107 id. 612; *Bradley* v. *Luce*, 99 id. 234; *Cassidy* v. *Cook*, id. 385.

The conduct of the deputy sheriff in making this sale, as well as the conduct of one of the plaintiffs, a lawyer, under whose direction the deputy sheriff acted, constituted an actual fraud upon appellant, from which a court of equity will relieve him.

Two things must first be shown before a sheriff's deed can be introduced in evidence, viz., a valid judgment, and execution to the sheriff of the county where the land is situated. Neither of these proofs was made. *Bybee* v. *Ashby*, 2 Gilm. 151; *Stribling* v. *Prettyman*, 57 Ill. 371; *Fischer* v. *Eslaman*, 68 id. 78; *Carbine* v. *Morris*, 92 id. 555.

*Laches* or limitations do not run against one in the peaceable possession of land. *Wilson* v. *Byers*, 77 Ill. 76; *Mills* v. *Lockwood*, 42 id. 112; *Whitsitt* v. *Trustees*, 110 id. 125.

Mr. NOAH E. GARY, for the appellee:

A party who has been guilty of *laches* can not claim the aid of a court of equity, unless such *laches* be imputable to the party claiming against him. *Dickerman* v. *Burgess*, 20 Ill. 267.

A delay of three years, where third parties have acquired rights under the sale, is unreasonable, and a very strong case must be made before a court will interfere.

*Prather* v. *Hill*, 36 Ill. 402, holds that the sole ground of relief that the sale was made *en masse*, is not sufficient. *Noyes* v. *True*, 23 Ill. 503, holds that inadequacy of price, alone, is not sufficient ground to set aside the sale after the lapse of the three years.

After the lapse of seven or eight years the court declines to inquire whether the price was adequate, or whether the sheriff should have sold in smaller quantities. *Roberts* v. *Fleming*, 53 Ill. 196; *Rogers* v. *Simmons*, 55 id. 76; *Winchell* v. *Edwards*, 57 id. 41; *Carpenter* v. *Carpenter*, 70 id. 457; *Walker* v. *Carrington*, 74 id. 448; *Hay* v. *Baugh*, 77 id. 500; *Gibbons* v. *Hoag*, 95 id. 45; *Maher* v. *Farwell*, 97 id. 56; *Breit* v. *Yeaton*, 101 id. 242; *Dobbins* v. *Wilson*, 107 id. 18.

As to sales made after the return day of the execution, see Rorer on Judicial Sales, pars. 872, 873; *Wheaton* v. *Sexton's Lessee*, 4 Wheat. 503; *Remington* v. *Linthicun*, 14 Pet. 84; *Launtz* v. *Gross*, 16 App. 329; *Corbin* v. *Pearce*, 81 Ill. 461.

If objections exist as to the manner of sale, the complaining party should appear and insist upon them to prevent approval of sale, and should move, within a reasonable time, to have the sale set aside. *Fergus* v. *Woodworth*, 44 Ill. 374.

The title of a purchaser at a sheriff's sale will not be defeated by reason of the sheriff making no return or a defective return. *Kinney* v. *Knoebel*, 47 Ill. 417.

The return of a sheriff of a sale, even if it showed defective notice of sale, could not affect the rights of a purchaser. The statute has not made the return evidence of the fact, nor is it a link in the chain of title, and neither immediate nor remote purchasers can be affected by it. *Osgood* v. *Blackmore*, 59 Ill. 262.

It is only on the ground of fraud, or that some one may have been prejudiced by the sale of lands *en masse*, that the sale will be set aside because the lands were not sold in separate parcels. *Ross* v. *Mead*, 5 Gilm. 171; *Gillespie* v. *Smith*, 29 Ill. 481; *Prather* v. *Hill*, 36 id. 402; *McMullen* v. *Gable*, 47 id. 67; *Fairman* v. *Peck*, 87 id. 481.

The sale of lands capable of division, *en masse*, by a sheriff, under execution, is not void, but merely voidable, and is binding on all parties until set aside, and if set aside, the court should protect the rights of the purchaser, etc. *McHany* v. *Schenk*, 88 Ill. 357.

A case of sacrifice must be made out to justify the setting aside of a sale. *Garret* v. *Moss*, 20 Ill. 550.

Inadequacy of price, alone, is not sufficient to set aside a sale. A house worth $4000 sold for $10, and the sale was sustained. *O'Callaghan* v. *O'Callaghan*, 91 Ill. 229; *Duncan* v. *Sanders*, 50 id. 475; *Comstock* v. *Purple*, 49 id. 158.

Mere inadequacy of consideration, where there is doubt as to the acquisition of title, and a prospect of litigation, will not invalidate the sale. *McHany* v. *Schenk*, 88 Ill. 357.

A prior adjudication between the same parties is conclusive upon them, not only as to the matters actually determined,

but as to every other thing within the knowledge of the parties which might have been set up as a ground of relief or defense. *Ruegger* v. *Railroad Co.* 103 Ill. 449; *Mix* v. *People*, 116 id.; 265; *Moshier* v. *Norton*, 100 id. 63; *Bennitt* v. *Star Mining Co.* 119 id. 9.

Mr. Justice Magruder delivered the opinion of the Court:

This is a bill filed on September 22, 1888, in the Circuit Court of DuPage County by the appellant against the appellee for the purpose of enjoining the prosecution of an ejectment suit, commenced in said court on June 29, 1888, by appellee against appellant to recover the possession of Lots 1, 4, 5 and 8 in Block 7 in the "original town of Hinsdale" in said county, and also for the purpose of setting aside certain deeds as clouds upon the title of appellant. After hearing had upon the bill, as originally filed and as subsequently amended, and the answer thereto and replication to the answer, and upon proofs oral and documentary, the Circuit Court found for the defendant below, the appellee here, and dismissed the bill for want of equity.

In a suit begun on the 31st day of October, 1867, in the Superior Court of Chicago by Joseph H. Tiffany for the use of M. J. Dunne against John Parker, the appellant here and the complainant below, judgment was rendered, on April 17, 1869, for $571.49 against Parker. Upon appeal to this Court the judgment was affirmed, as will be seen by reference to the case of *Parker* v. *Tiffany*, 52 Ill. 286.

An execution, dated June 23, 1870, was issued upon said judgment from said Superior Court to the Sheriff of DuPage County. A certificate of levy, dated June 30, 1870, and signed by "Charles Rinehart Sheriff of DuPage County," certifying that, by virtue of said "execution *and fee bill*" so issued, the Sheriff had levied upon Lots 4, 5 and 1, in Block 7 "in the original town of Hinsdale," was filed in the recorder's office

of that county on June 30, 1870. Afterwards on September 21, 1870, there was recorded in said recorder's office another certificate of levy, dated September 21, 1870, signed by same Sheriff by "W. James Cowan, Deputy," certifying that, by virtue of "*an execution* issued out of the Superior Court," etc., (describing the same execution of June 23, 1870, above named,) the Sheriff had levied upon Lots 1, 4, 5 and 8 in Block 7 in the "town of village of Hinsdale."

On February 2, 1872, there was filed in said recorder's office a certificate of sale, dated October 29, 1870, purporting to be signed by Charles Rinehart Sheriff of said county, certifying, that, by virtue of said execution of June 23, 1870, he did on the 29th day of October, 1870, at the hour of 5 o'clock P. M. offer at public sale Lots 1, 4, 5 and 8 in block 7 in "the village of Hinsdale," and "M. J. Dunne having bid the sum of $20.00, he being the highest bidder at sale became the purchaser," and that if the "property shall not be redeemed within fifteen months from this date according to law, the said M. J. Dunne will be entitled to a deed," etc.

On February 16, 1872, there was recorded in said recorder's office a Sheriff's deed, dated February 14, 1872, executed by John Kline, Sheriff of said county (as successor to Rinehart,) reciting, that Tiffany for the use of said Dunne did, at the *June* Term, 1870, of said Superior Court recover a judgment for the sum of . . . . . . dollars and costs of suit against Parker, etc., upon which the execution aforesaid was issued, and levied by Rinehart upon said lots, and that "the same were struck off and sold to M. J. Dunne　*　*　*　he being the highest and best bidder therefor," and thereby conveying to Dunne, in consideration of the premises and the sum of $20.00, said four lots in the "village of Hinsdale."

Dunne made a deed dated June 3, 1876, and recorded June 6, 1876, to Dell Stuart of the four lots in "the village of Hinsdale." By deed dated March 13, 1879, and recorded June 19, 1879, Stuart conveyed the four lots in the "village" to Edwin

F. Bayley.   By deed dated May 7, 1883, and recorded May
15, 1883, Bayley conveyed the lots described as being in the
"village" to Shannon, the defendant below.   Also, one Samuel
B. Munson by a deed dated November 19, 1883, and recorded
November 26, 1883, conveyed lots 1 and 4 in Block 7 in the
"original town of Hinsdale" to the defendant Shannon.   The
deeds thus described beginning with the Sheriff's deed to Dunne
are the deeds, which the present bill seeks to set aside.

In 1884 Shannon filed a bill against Parker and his wife
to enjoin them from interfering with the lots, etc.   Upon this
bill a decree was entered in favor of Shannon, which was
brought to this court by writ of error and reversed, as will be
seen by reference to *Parker et al.* v. *Shannon*, 114 Ill. 192.
A second decree entered in the same case was again reversed
by this court, and the cause was remanded for further pro-
ceedings, as will appear from *Parker et al.* v. *Shannon*, 121 Ill.
452.   Since the last reversal Shannon seems to have aban-
doned the chancery proceeding and brought ejectment as above
stated.

When the four lots in question were sold at the Sheriff's
sale for $20.00, they were worth about $5000.00.   Here was
gross inadequacy of price; and, while inadequacy of price
alone may not justify a court of chancery in setting aside a
judicial sale, yet equity will seize hold of serious irregularities
in the mode of sale, or of any circumstances of unfairness
towards the debtor, in order to grant relief in a case where
such gross inadequacy is shown to exist.   Such is the settled
doctrine of this Court, and we deem it sufficient merely to
state it here, referring for its further amplification and illus-
tration to our former decisions.   (*Thomas* v. *Hebenstreit*, 68
Ill. 115; *Hamilton* v. *Quimby*, 46 id. 90; *Morris* v. *Robey*, 73
id. 462; *Roseman* v. *Miller*, 84 id. 297; *Berry* v. *Lovi*, 107 id.
612.)   It, therefore, becomes necessary to examine into the
facts connected with the Sheriff's sale to see whether there
are any evidences of irregularity and unfairness.

The execution of June 23, 1870, was the second execution issued upon the judgment, though it was the first that was issued to DuPage County. The great fire of October, 1871, destroyed all the records and papers in the offices of the clerk of the Superior Court of Chicago and of the Sheriff of Cook County. None of the executions issued from that court can be produced. It can not be learned what return the Sheriff made upon the execution of June 23 after the alleged sale on October 29, 1870. The only record evidence consists of a transcript of a judgment docket, kept by certain abstract makers in Chicago and consisting of minutes and memoranda taken by them before the fire from the files of said court. This transcript, which is admitted in evidence by agreement, contains the following minute: "No. of execution, 14815; Date of execution, June 23, 1870; return of execution, Ret. sat. for $7.95 from DuPage Co." From this it would appear that the execution was returned satisfied for $7.95.

The sale appears to have been made by Cowan, as deputy for Rinehart late in the day on October 29. Nobody was present except Cowan and Dunne. Humphreyville & Dunne were the attorneys, who obtained the judgment for Tiffany, and had an arrangement with him by which they were to have one half of what should be recovered in the suit. Dunne did not bid the $20.00 for Tiffany, but for himself. There is no evidence that he actually paid the $20.00.

The contention of Parker is, that he paid the whole amount of the judgment and costs, and that he never knew of any sale of his property under any execution until nearly six years after October 29, 1870. In support of his claim that he paid the judgment, he produces the following receipt: "Hinsdale Dec. 8, 1870. Received of John Parker $695.00 to apply in settlement of execution and costs in case of J. H. Tiffany vs. John Parker. (Signed) John Kline, Sheriff of DuPage County, per W. James Cowan, Dept." Another receipt is also produced, dated December 15, 1870, and signed by Humphreyville &

Dunne, as the plaintiff's attorneys, acknowledging the receipt from Kline, sheriff, of $670.16 "in satisfaction of an execution in favor of J. H. Tiffany vs. John Parker." It is not denied that Parker did pay the Sheriff $695.00 on December 8, 1870. Rinehart had gone out of office on December 5, 1870, and Kline had succeeded him, but Cowan seems to have continued to be deputy.

The transcript above referred to shows, that another execution, dated November 10, 1870, was issued to DuPage County, and returned satisfied in full. Still another execution, dated November 12, 1870, was issued from this Court for the recovery of Tiffany's costs amounting to $20.48. This latter execution was returned satisfied in full by payment to plaintiff's attorneys. The payment of the $695.00 was made by Parker to Cowan at the former's house in Hinsdale after dark on the evening of December 8, 1870. Parker swears, that Cowan did not tell him of any sale that had been made under a former execution, but figured up what he claimed to be due; that he paid Cowan $695.00 in full satisfaction of the whole judgment. After a careful examination of the evidence, we are satisfied that Parker's testimony is true. Cowan, the deputy, left Du-Page County in May, 1871, and went to Wisconsin where he has lived ever since. He recollects very little about the transactions, and is very indefinite in all his statements.

Many circumstances tend to confirm Parker. There was evidently an effort made to conceal the fact of the sale. Although Humphreyville was entitled to one fourth of the amount paid upon the judgment, he swears that Dunne never paid him a cent; that no execution was ever issued upon the judgment to his knowledge; that the business docket of the firm did not show the issuance of any execution or any sale of property under the judgment; that Tiffany was his client, but he is unable to say whether Tiffany was paid anything by Dunne or not. Humphreyville did not know anything about the sale, or the payment of the $695.00 to Dunne, until 1889. Tiffany

is dead. Dunne says that he paid Tiffany in his life time his share of the recovery, but never told him of the sale.

The certificate of sale was not recorded in DuPage County until after the time of redemption expired. The time of redemption expired on January 29, 1872, and no certificate was recorded until February 2, 1872, about two weeks before the Sheriff's deed was recorded. The statute required the Sheriff to record the duplicate certificate within ten days from the sale, and also required that such certificate should state not only the sum paid or bid at the sale, but also "the time when the purchaser will be entitled to a deed." The object of recording the certificate is to give notice of the sale, so that the debtor and his creditors may redeem. Such notice is especially necessary, where the execution issues upon a judgment rendered in one county, and the land sold lies in another county, as was the case here. A notice on February 2, 1872, that the purchaser at the sheriff's sale will be entitled to a deed on January 29 or 30, 1872, can be of no use to the debtor or his creditors. Before the notice was recorded, the right to redeem was gone. (*Briscoe* v. *York*, 53 Ill. 484; *Berry* v. *Lovi, supra; Thomas* v. *Hebenstreit, supra.*) The failure to record the duplicate certificate for so long a time tends to show, that, after the settlement with Parker on December 8, 1870, the sale was abandoned, or regarded as cancelled by redemption, or purposely concealed so that Parker could not redeem.

The unfairness of the proceeding is manifest when the amount paid by Parker is considered. On December 8, 1870, all that it was necessary for him to pay to redeem from the sale was $20.25. We are satisfied that on that day he paid at least $20.25 over and above what was actually due from him upon the execution of November 10. In justice and conscience, it was the duty of the Sheriff to file a redemption certificate as the statute required. If Parker knew of this sale on December 8, it is much more reasonable to suppose that the surplus, which the evidence shows to have been then paid,

25—137 ILL.

was intended to be applied to the redemption of the property
than that he would allow it to go unredeemed. Why would
he pay $695.00 to discharge this judgment, and let 4 lots,
each 66 feet front, three blocks from the station in Hinsdale
and worth not less than $5000.00, remain subject to sale
under the same judgment, when by paying $20.25 more he
could save the lots as well as discharge the judgment? In
*Roseman* v. *Miller, supra,* there was a sheriff's sale for $10.00
of lands worth from $6000.00 to $8000.00 under a judgment
for $1735.25, and the debtor paid the Sheriff $444.00 on the
judgment after the sale. We there used this language: "If
he had not supposed the sale informal and of no validity, why
not, out of the $444.00, appropriate enough to redeem from
it? This would have been most natural. * * * Nothing
could be gained by leaving this amount to stand, and appro-
priating all the payments on the balance of the judgment."

The evidence is not satisfactory that these lots were not
sold *en masse* for $20.00. Dunne says: "I *think*" they were
sold separately. Cowan who evidently remembered nothing
about it except what he had been told by Dunne just before
testifying says, in answer to the question how he offered the
property for sale: "Well, I am studying on this thing. I have
got to refresh my recollection. I *think* I offered it in separate
parcels." The certificate of sale, and the Sheriff's deed made
in February, 1872, both recite that the four lots were struck
off and sold for $20.00, and neither states that each was sold
separately for $5.00, as is now claimed. In a deed, acknowl-
edged by Kline as Sheriff on June 13, 1876, and recorded the
same day, which recites that it is made to "correct and supply
any defects in the description of said judgment" in the former
Sheriff's deed of 1872, there is a further recitation that the
lots were struck off and sold each for $5.00. This corrective
deed was procured just before the beginning of the ejectment
suit in the United States Circuit Court hereinafter mentioned,
and was executed nearly six years after the sale by a Sheriff

who did not make the sale but came into office after it was made, and therefore could not know how it had been conducted. We do not think that the Sheriff had any power to make this corrective deed in 1876.

It is not necessary to decide whether or not a Sheriff can make a second deed to correct a former one and to make new recitals, if such second deed is made within five years after the expiration of the time of redemption. Under the present statute he can make the first deed any time within such period. The 30th section of the Act in regard to Judgments, etc. (Rev. Stat. chap. 77), which took effect July 1, 1872, provides that "if the time of redemption shall have elapsed before the taking effect of this Act, a deed may be given within two years from the time this Act shall take effect." In the present case, as the time of redemption expired January 30, 1872, the time within which the Sheriff could have made the first deed, expired on July 2, 1874. Inasmuch, therefore, as the sheriff had no power to make the original deed after the latter date, he had no power to make a deed correcting the former one and adding to its recitals. (*Ryhiner* v. *Frank*, 105 Ill. 326.) It follows that the title derived under the Sheriff's sale must rest upon the original deed of 1872.

The latter deed omitted to state the amount of the judgment, and incorrectly stated that Tiffany recovered a judgment at the *June* Term, 1870, of the Court, instead of the *April* Term, 1869.

The law in force when this sale was made provided that the Sheriff's deed should be evidence that the provisions of the law in relation to the sale had been complied with "until the contrary shall be shown." In this case, the defendant below sought to show, that the land had been advertised by publication once in each week for three successive weeks, and that notices had been posted in three of the most public places in the county. (Gross' Stat. of 1871, page 381). But his proof failed to establish either the posting or the publication. When

asked if he posted the notices, Cowan answered: "I can't say that I did." He swears that he was only able to discover an advertisement of the sale in two issues of the Wheaton "Illinoisan," the weekly DuPage County newspaper published at Wheaton, and that he failed to find any issue which showed a third insertion of the notice.

In 1875 Parker and Munson, who were then engaged in business together and occupied the same office, had some kind of trade with each other, by which the former proposed to sell to the latter said lots 1 and 4, or to exchange them for other property. To carry out this trade a deed conveying lots 1 and 4 to Munson was executed by Parker. This deed, though dated April 15, 1875, was not acknowledged until December 24, 1875. Munson and Parker did business in Chicago. Munson did not live in Hinsdale. He sent the deed to the recorder of DuPage County at Wheaton to examine the title, with instructions not to record it until the examination had been made. By some error or mistake on the part of the recorder, the deed was recorded on February 17, 1876. The recorder made report, that there had been a Sheriff's sale. On account of this defect in the title the trade fell through. The deed was never actually delivered to Munson. He never paid a cent for the lots, nor had any possession of them, nor claimed any ownership in them. It was when the recorder thus made his report that Parker first learned of the Sheriff's sale. He at once went to see Dunne to ascertain what it meant. He says Dunne told him he had obtained the deed "for a little purpose—to make something out of it," and asked him $100.00 for a quit-claim deed, which he refused to pay. In testifying about this interview Dunne says: "He (Parker) claimed he paid the full judgment; that he didn't know the sale had been made." The second levy had been made upon the lots on the last day of the life of the execution; the sale had not been made until more than four months after the issuance of the execution; the issuance of the execution of

November 10 followed very closely upon the sale of October 29, and more closely upon the return of the execution of June 23; it is not surprising that a man unlearned in the law should have failed to understand the different proceedings under the two writs, and, as he paid $695.00 when demand was made under the execution of November 10, it is more than probable that he would have paid the judgment before sale if any demand had been made under the execution of June 23.

In view of the great difference between the bid at the sale and the value of the lots, considered in connection with the irregularities and circumstances of unfairness thus pointed out, we think that Parker was clearly entitled to have this sale set aside as against Dunne under the authorities above referred to. The question now arises whether Shannon can be regarded as a bona fide purchaser without notice.

The evidence is clear to our minds that Parker was in the open and notorious possession of these lots from 1868 to the spring of 1884 when his possession was forcibly invaded by Shannon. Parker lived upon the premises one year, and then moved across the street from them. Thereafter he kept the lots enclosed by a fence and had a barn on them, in which he kept personal property stored, and also pastured his horse in the enclosure. It was generally known in Hinsdale that he was the owner. Shannon bought a house and lot in Hinsdale, and began to reside there in the fall of 1881, and has lived there ever since. His lot is in the same block with the lots in controversy, and is separated from them by an alley only. He was Parker's neighbor for nearly two years before he obtained his deeds from Bayley and Munson, and knew that Parker was in possession of the property and claimed to own it. Several witnesses testify to having told him of Parker's possession and ownership. He admits himself that he talked with one of his neighbors, named Webster, in the fall of 1882 about getting Parker to move the barn on these lots. Several witnesses testify that they entertained the idea at several

different times of buying up the sheriff's title, which was generally understood to be outstanding against the lots after Shannon moved to Hinsdale, but they were always told by Parker when they approached him on the subject that he had paid the judgment, and he showed them the receipt given to him by the Sheriff. The appellee did not go to Parker, although the latter was his neighbor, but went to work to buy up the claims against the lots for the purposes of speculation. Parker's possession, and the fact that the irregularities here noted were apparent upon the face of the records, were sufficient to put him upon inquiry as to Parker's equities.

Stuart and Bayley were bound to take the same notice of Parker's rights, with which Shannon was affected. But we do not regard them as in any sense bona fide purchasers. They held the title for Dunne. Stuart was a lawyer living in Iowa, and the title was placed in him by Dunne because he was a non-resident, for the purpose of beginning an ejectment suit in the Federal Court. Mr. Bayley was a lawyer who had an office next to Dunne's office, and, through one of his clerks named Harper, negotiations were entered into with Stuart to take the title before the ejectment suit was begun, and to return it after the suit was ended. Bayley was the attorney who managed that suit before the Federal Court, and Dunne testified as a witness. Dunne conveyed the lots to Stuart twenty days before the action of ejectment was brought, and Stuart conveyed them back to Bayley about eighteen days after judgment was obtained. There was an arrangement between Dunne and Bayley, by which Bayley was to sell the lots, and pay over to Dunne a certain proportion of the proceeds of sale. Bayley admits, that on the trial of the ejectment suit and before he received the deed from Stuart, Parker "*attempted*" to show that the execution had been paid; and he also admits that he knew of Parker's possession. He, therefore, had actual as well as constructive notice.

We do not think the judgment in the ejectment suit can be regarded as an estoppel, or as a former adjudication that is conclusive under the facts of this case.   It only had reference to two of the lots—lots five and eight in block seven in the village of Hinsdale.   There was a trial of the case in 1877, resulting in verdict and judgment in favor of Stuart.   Whether the facts hereinbefore set up could have been shown as a defense in ejectment or not, it appears that the defendant was not allowed to prove them.   The costs were paid under the statute after the first trial, and a new trial was granted.   When the case came before the court the second time, there was no contest.   Through the carelessness, or intentional neglect of Parker's attorney, a default was entered against him, and the judgment as finally entered on February 25, 1879, was a default judgment.   That judgment merely found the legal title to be in Stuart, but was in no sense an adjudication upon the equities here under consideration which were not passed upon, and, in view of the rulings upon the first trial, were not such matters as might have been set up.   They are the proper subject matter of a chancery proceeding.   Moreover, no writ of possession was ever served upon Parker in that suit.   No attempt was made to enforce the judgment against him, but the proceeding seems to have been abandoned.   When Shannon obtained his deeds, he did not attempt to get possession under the judgment, if he could have done so in Stuart's name. He took forcible possession and filed the bill mentioned in 114 Ill. 192, *supra*.   He has instituted no proceeding to revive the judgment, if he could have done so, since the lapse of. seven years from its rendition, but in 1888 began a new ejectment suit against appellant as above stated.   As matter of fact, the bringing of the suit in the name of Stuart was a. fraud upon the jurisdiction of the Federal Court, and the judgment therein obtained does not commend itself to the favorable notice of this court.

Nor can appellee sustain the title which he obtained from Munson. He sent a man named Dorathy to Munson to obtain a deed from the latter of lots 1 and 4. Munson had given Dorathy quit claim deeds of certain lots, upon which he had some apparent claim, on several different occasions, accepting $10.00 for each deed. Munson declined at first to give a deed to lots 1 and 4, saying to Dorathy that he had no interest or ownership in the lots, and would do nothing to injure Parker. Dorathy went to see him several times, and persuaded him that Parker's title had been extinguished, saying that the abstract had been examined and the title had been found to be in other parties than Parker. Munson finally executed a deed to Shannon upon being paid $25.00 by Dorathy. Afterwards on May 31, 1884, when Munson found out from Parker the real facts he executed to the latter a deed, declaring that the deed from Parker to himself had been made without any consideration, that he had paid nothing for it, and had acquired no title by it, and that it had been recorded through a misunderstanding.

Dorathy was the agent of appellee to procure the deed from Munson. In the prosecution of his agency he received notice that Munson had paid nothing for the land, and had no interest in it, and held whatever title appeared to be in him for Parker. Notice to Dorathy, the agent, was under these circumstances, notice to Shannon, the principal. (2 Pomeroy's Eq. Jur. sec. 671). Therefore the deed from Munson to appellee conveyed no title, which can be upheld as against Parker. The fact that Parker withheld the deed made to him by Robbins from record cuts no figure, as Dunne went to see Robbins and knew that Parker had a deed.

Laches cannot be imputed to the complainant in bringing this bill, because he was in possession of the lots before the Tiffany judgment was rendered and has been in the continuous possession thereof ever since. A statute of limitations, or rule of limitation in equity does not run against "a possessor

of real estate, but it runs against him who is out of possession."
(*Mills* v. *Lockwood*, 42 Ill. 112). "The possession is notice to
all of the possessor's equitable rights, and he need to assert
them only when he may find occasion to do so." (*Wilson* v.
*Byers*, 77 Ill. 76; *Whitsitt* v. *Trustees, etc.* 110 id. 125). We
think the complainant below was entitled to the relief asked
for, but he should be required to refund to the defendant what-
ever monies the latter may have expended in paying taxes, or
taking up tax claims upon the lots.

The decree of the Circuit Court is reversed and the cause is
remanded to that court for further proceedings in accordance
with the views herein expressed.

*Decree reversed.*