## Carrie E. Way and William T. Way v. Anna M. Roth and Jennie M. Conklin.

1. MORTGAGED PREMISES—*Sale of, Subject to the Mortgage—Grantee's Liability.*—The conveyance of land upon which there is a mortgage, though made by warranty deed and subject to the mortgage, does not necessarily make the purchaser of the land liable to the mortgagee for the mortgage debt. To create such a liability there must be an express promise, or the amount of the mortgage must have been deducted from the purchase price of the land so as to raise an implied promise to pay. Where this has been done, the mortgagee may hold the grantee to a personal liability.

Way v. Roth.

2. SAME—*Agreement to Assume Mortgage—Buildings Erected upon Other Premises by Mistake Held Subject to the Lien.*—The owner of two lots erected a house, as he supposed upon them, but by an error in measurement it was, in fact, upon adjoining lots. Without discovering his error he mortgaged his lots and then sold them, the grantee agreeing to pay the mortgage as a part of the purchase money. Upon discovering the error, the grantee bought the lots upon which the house was, for what they were worth as vacant lots. Upon a bill filed to subject the house to the lien of the mortgage, it was held that as the grantee of the lots bought them with a full knowledge of all the facts, and so obtained the house which should have been covered by the mortgage, he had put himself in a position to pay the mortgage according to the contract made by him when he received the deed of the lots upon which the house was intended to be, and must be held to a personal liability.

3. CHANCERY PRACTICE—*Specific Relief Under a General Prayer.*—Where the relief granted is not the specific relief prayed for, if it is within the scope of the general prayer, it will be sufficient if in line with the allegations of the bill.

**Bill for Relief.**—In equity. Appeal from a decree of the Circuit Court of St. Clair County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the August term, 1894. Affirmed. Opinion filed March 23, 1895.

APPELLANTS' BRIEF, J. W. BARTHOLOMEW AND B. H. CANBY, ATTORNEYS.

The court can not, under color of reformation, make a contract for parties to which both never assented or intended to make. Jones on Mortg., Vol. 1, Sec. 97.

Rectification can only be had where both parties have executed an instrument under a common mistake, and have done what neither of them intended. A mistake on one side may be ground for rescinding, but not for correcting or rectifying an agreement. Kerr on Fraud and Mistake, Sec. 422; Sutherland v. Sutherland, 69 Ill. 488; Schwass v. Hershey, 125 Ill. 653; Wilson v. Byers, 77 Ill. 76; Broadwell et al. v. Broadwell, 1 Gilm. 607.

A mutual mistake in regard to the title to property is a ground for rescinding a contract. Haddock v. Williams, 10 Vt. 570; Smith v. Robertson, 23 Ala. 312; Brown v. Lamphear, 35 Vt. 252.

DILL & SCHAEFER and GEORGE C. REBHAN, attorneys for appellees.

MR. PRESIDING JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

There were four lots in Alta Sita, each of twenty-five feet frontage, and numbered, respectively, 30, 31, 32 and 33, in block 13. In the spring of 1892, Mrs. Clara A. Brooks was the owner of lots 30 and 31, and John A. Perry was the owner of lots 32 and 33.

Mrs. Brooks' husband, as her agent, began the erection of a two-story building on her lots, as he supposed. He completed the foundation and erected certain out-buildings. By mistake, however, these improvements were made on lots 32 and 33 instead of lots 30 and 31.

Mrs. Brooks, without proceeding further with the erection of the house, sold her lots to Thomas B. Glenn. On October 8, 1892, Glenn borrowed $1,400 of Anna M. Roth, one of appellees, and executed and delivered to her a note for the amount so borrowed and a mortgage on lots 30 and 31, to secure the payment of the note. At least $950 of the borrowed money was used in the erection of the house on lots 32 and 33. On December 29, 1892, Glenn, who was an unmarried man, conveyed lots 30 and 31, by general warranty deed to Mrs. Jennie M. Conklin, for the consideration of $3,500, subject to the said mortgage for $1,400.

On June 20, 1893, Mrs. Conklin and her husband conveyed lots 30 and 31, by general warranty deed, to the appellant, Carrie E. Way, for the consideration of $2,400, subject to the said mortgage for $1,400.

The consideration of $3,500 in the conveyance from Glenn to Mrs. Conklin was paid by an exchange of property. The price of each piece of property was exaggerated, after the manner of such transactions, but the deed was made subject to the mortgage as above stated, and the amount of the mortgage was actually deducted from the consideration named in the deed—that is to say, the property deeded by Glenn, without the mortgage, was estimated to be worth $1,400 more than that deeded to him.

The consideration of $2,400 in the conveyance from Mrs. Conklin to Mrs. Way was paid as follows: The mortgage

of $1,400 was deducted from the consideration, the sum of $550 was paid in cash, and a note for $450 was given for the remainder.    In the abstract prepared by Mrs. Way's counsel, she is made to testify as follows: " The exact amount I was to pay was a $1,400 mortgage, $550 in cash, and I gave a mortgage for $450."    The evidence shows quite clearly that Mrs. Way assumed and was to pay the mortgage for $1,400.

Until the early part of August, 1893, all of the parties to said transactions and conveyances supposed that the house and out-buildings were on lots 30 and 31, but the fact was, as has been stated, that these improvements were on lots 32 and 33, which were owned by John A. Perry.

In making measurements for the erection of a fence, the mistake was discovered.    As soon as Mrs. Way learned of the mistake, she made a parol contract with Perry's agent for the purchase of lots 32 and 33 for $400, the estimated value thereof as vacant property, and paid a small part of the purchase price.

As soon as Mrs. Roth's agent learned of the mistake, he sought to protect his principal by purchasing lots 32 and 33 for her; but Mrs. Way completed her contract, received a deed for the two lots, paid $100 in cash, and gave two notes, secured by a mortgage on the lots, for the remainder of the purchase money.    Mrs. Way bought with the full knowledge of the facts above stated.    She was aware of Mrs. Roth's desire to purchase the two lots.

During the time of these transactions, lots 30 and 31 were not worth more than $400.    The buildings erected on lots 32 and 33 were worth at least $2,000.

Mrs. Roth filed her bill in chancery, setting forth, as the same was afterward amended, the foregoing facts, and praying that her mortgage be corrected so as to include therein lots 32 and 33; that said mortgage be declared a first lien on all of the four lots; that defendants, Mrs. Way and her husband, and Mrs. Conklin, be required to pay the amount due; and that in default thereof the lots be sold for the satisfaction of the mortgage.

The bill concluded with a general prayer for relief.

The answer of Mrs. Conklin to the bill admitted the allegations thereof to be substantially true. The answers of Mrs. Way and her husband admitted some of the allegations and denied others, and denied especially that the complainant was entitled to relief in any event.

Mrs. Way and her husband filed a cross-bill against Mrs. Roth and Mrs. Conklin, praying for a rescission of the contract between Mrs. Conklin and Mrs. Way, whereby the latter had purchased lots 30 and 31, and for a cancellation of the note for $450, and also for the re-payment of the $550 paid Mrs. Conklin in cash for those lots.

The defendants to the cross-bill answered the same by denying the right to the relief prayed for.

Replications were duly filed and the cause was heard by the court upon depositions, documentary evidence and the testimony of witnesses examined in open court.

The decree rendered by the chancellor finds the facts substantially as stated in the original bill; that Mrs. Way is personably liable for the amount due Mrs. Roth under the note and mortgage for $1,400; that the mortgage should be foreclosed on lots 30 and 31; and that a personal decree should be rendered against Mrs. Way for the deficiency. The decree follows these findings, forecloses the mortgage, holds Mrs. Way for the deficiency, and dismisses the cross-bill.

On the part of appellants, it is assigned for error that the court erred in dismissing the cross-bill and in rendering a personal decree against Mrs. Way.

On the part of Mrs. Roth, it is assigned as a cross-error, that the court erred in refusing to declare a lien in her favor on lots 32 and 33.

It seems to be the well-settled law of this State that the conveyance of land by A, on which C holds a mortgage, to B, though made by warranty deed, and subject to the mortgage, does not necessarily render B liable to C for the mortgage debt. To create such a liability there must be an express promise, or the amount of the mortgage must have been deducted from the purchase price of the land so as to

Way v. Roth.

raise an implied promise to pay. Where this has been done, the mortgagee may hold the grantee to a personal liability in an appropriate action. Comstock v. Hitt, 37 Ill. 542; Fowler v. Fay et al., 62 Ill. 375; Rapp v. Stoner et al., 104 Ill. 618; Dean v. Walker, 107 Ill. 540.

In the case under consideration, not only was the warranty deed to Mrs. Way made subject to the mortgage, but the amount of the mortgage was deducted from the purchase price and Mrs. Way was to pay this mortgage as the balance of the purchase money. Thus Mrs. Way would have become personally liable, under ordinary circumstances, to Mrs. Roth, for the amount of the mortgage.

But it is said that Mrs. Way agreed to pay $2,400 for lots 30 and 31, believing that the buildings were upon them, and was a loser herself by the transaction; and that Mrs. Way, an innocent sufferer, should not be required to make good the loss of another sufferer, whose equities are no stronger than hers.

But even if this were true, it must be remembered that Mrs. Way, to make herself whole, bought lots 32 and 33 for what they would have been worth as unimproved lots, and thus obtained the buildings which should have been covered by Mrs. Roth's mortgage. This was done by Mrs. Way with full knowledge of all the facts. She has thus put herself into a position to pay Mrs. Roth's mortgage according to the contract made by her when she received the deed from Mrs. Conklin, and must be held to have reaffirmed that arrangement and to have prepared for a renewed personal liability.

Especially is this true when Mrs. Roth desired to buy lots 32 and 33 for her protection, which would have operated to release Mrs. Way from personal liability, and the latter, in preference to being released, elected to purchase the lots for herself. To hold that Mrs. Way can now escape a personal liability would be to allow the perpetration of a fraud. Wilson v. Byers et al., 77 Ill. 76.

Perhaps the chancellor could have decreed a lien upon lots 32 and 33, as is insisted by Mrs. Roth; but this is some-

what doubtful, and the relief granted is not doubtful, and is adequate under the circumstances, as Mrs. Roth's counsel admit.

While the relief granted is not the specific relief prayed for, yet it is within the scope of the general prayer. Part of the specific prayer is that appellants be required to pay the amount due. But if this language does not authorize the relief granted, the general prayer, in view of the allegations of the bill, is certainly sufficient for that purpose.

There was no equity in the cross-bill and the same was properly dismissed.

The decree of the Circuit Court is affirmed.