### George Ingram v. Samuel R. Ingram.

71  497
172s 287

1. MORTGAGES—*Sales Subject to — Liability of Grantee.*—When a grantee in a deed conveying lands, upon which there is a mortgage securing a debt, assumes and agrees to pay the debt as a part of the consideration for which the lands are conveyed to him, he thereby becomes personally liable to the mortgagee and may be sued by him, and may also be held responsible for any deficiency upon a foreclosure of the mortgage and sale of the premises.

2. SAME—*Sales Subject to—Rights of Mortgagor Where Land is Reconveyed to Him by Warranty Deed.*—A sold certain land to B, who

assumed and agreed to pay a mortgage thereon. At a later date, B deeded the same land to A by a warranty deed. After B's death, the mortgage remaining unpaid, A filed a petition in the County Court against B's administrator and heirs, asking for an order for its payment. *Held*, that B's estate was liable for the amount of the mortgage and that payment thereof by A was not necessary to entitle him to proceed against the estate to enforce its collection.

3. Evidence—*Explanatory of a Written Instrument.*—The oral testimony heard on the trial of this case leads to no different conclusion than that to be drawn from the papers, but is merely explanatory, and this court see no impropriety in its consideration by the trial court.

**Petition,** in probate. Appeal from the Circuit Court of La Salle County; the Hon. Charles Blanchard, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed September 20, 1897.

H. Mayo, attorney for appellant.

When Seth Ingram, upon February 3, 1894, by virtue of receiving the deed of Samuel R. Ingram, and executing the contract to him, of even date therewith, assumed the Hodge mortgage, he became, as between himself and Samuel Ingram, the principal debtor as to the mortgage debt, and Samuel Ingram became surety; and therefore Samuel can not now, in any event, compel the estate to relieve him from the payment of this mortgage until he has paid it off himself.

That the relation of principal and surety arises in cases of this nature, see Jones on Mortgages, Vol. 1, Sec. 741; Dean v. Walker, 107 Ill. 540; Flagg v. Geltmacher, 98 Ill. 293; Kinney v. Wells, 59 Ill. App. 271; Am. & Eng. Ency. Law, Vol. 15, 837; Union Mut. Life Ins. Co. v. Hanford, 143 U. S. 187. The rule in this State is that " a surety has no cause of action over against the principal until he has paid the debt." Shepard v. Ogden, 2 Scam. 257; Bonham v. Galloway, 13 Ill. 68; Stevens v. Hurlburt, 25 Ill. App. 124.

The Supreme Court has repeatedly laid down the rule, that where a grantee sues his grantor for a breach of a covenant against incumbrances, " the grantee can recover only such damages as he has sustained, and if he has not been disturbed, or has paid nothing to remove incumbrances,

he can recover only nominal damages." Willets v. Bur-
gess, 34 Ill. 494; McCord v. Massey, 51 Ill. App. 186.

The obligation, then, which Seth Ingram took upon him-
self when he assumed the mortgage debt, by the deed
and contract of February 3, 1894, and which obligation
remained unimpaired until November 30, 1894, was substan-
tially this: Seth Ingram became the principal debtor, as
to this debt upon the land, and Samuel became surety for
the payment of the debt. Hodge could still maintain an
action, provided the debt fell due, against Samuel and
recover the amount of the debt from him, and in such a
case Samuel would have had the right to be subrogated to
the rights of Hodge as against the land. But Samuel could
in no event have a right of action against Seth until he had
himself paid the debt.

In support of this position we cite the following author-
ities: Halsey v. Reed, 9 Paige (N. Y.), 446; Wright v.
Butler, 6 Wend. (N. Y.) 284; Cumberland v. Codrington, 3
Johns. Ch. (N. Y.) 229; Ayers v. Dixon, 78 N. Y. 318.

It has been held in this State, where a question similar to
the one here involved arose between the heirs and personal
representatives of a deceased person, that when a man pur-
chases, or has devised to him, land with an incumbrance on
it, he becomes a debtor only with respect to the land, and
if he promises to pay it, it is a promise rather on account
of the land, which continues, notwithstanding, to be the
primary fund; and the same equity which, in other cases,
makes the personal estate contribute to ease the land, as
between the real and personal representatives, will here
make the land relieve the personal estate. Sutherland v.
Harrison, 86 Ill. 366; Duke of Cumberland v. Codrington,
3 Johns. Ch. (N. Y.) 229 and notes; Mount v. Van Ness, 33
N. J. Eq. 262; Crowell v. Hospital of St. Barnabas, 27 N.
J. Eq. 650; Halsey v. Reed, 9 Paige (N. Y.), 446.

SNOW & HINEBAUGH, attorneys for appellee.

There is no reason why an agreement may not be made
which shall bind the party so contracting, to pay the debt

which another owes, and thus relieve him or his estate from it, and if the promise thus made is not kept, why the promisee should not recover a sum sufficient to enable him to do so. Furnas v. Durgin, 119 Mass. 500; Wilson v. Stillwell, 9 Ohio St. 467; Stout v. Folger, 34 Iowa, 74; Lethbridge et al. v. Mytton, 2 Barn & Ad. 772; Penny v. Foy, 8 Barn. & Cress. 11.

MR. JUSTICE DIBELL DELIVERED THE OPINION OF THE COURT.

Seth Ingram died testate June 12, 1895, leaving a number of children, among whom are appellant and appellee. This suit originated in the Probate Court of La Salle County by the filing of a petition by said Samuel R. Ingram in the estate of said Seth Ingram, deceased, asking that the executors be ordered to pay two certain mortgage debts, which it was alleged deceased in his lifetime had assumed and agreed to pay, and to refund to petitioner certain interest he had paid thereon. All parties in interest, including the holders of said mortgage debts, were made defendants to the proceeding and were duly summoned, and George Ingram and others answered. There was a hearing and an order directing said executor to pay one of said mortgages, and to refund to petitioner interest paid by him thereon, and disallowing the prayer of the petition as to the other mortgage. George Ingram appealed to the Circuit Court, where there was another hearing and a like order, from which he appeals to this court. No cross-errors are assigned, and as the mortgage disallowed had no important connection with the transaction hereinafter set forth, it will not be further mentioned.

The facts are not disputed and are as follows: On and prior to February 3, 1894, Samuel R. Ingram owned a farm of one hundred and seven acres, being those parts of the southwest quarter of section 6, and of the northwest quarter of section 7, which lie west of the Illinois Central Railroad in Groveland township, La Salle county, Illinois. Upon said lands was an unpaid mortgage, executed by Samuel and his wife to Lewis J. Hodge, of Wenona, Ill., given in March,

1892, securing a note of Samuel for the principal sum of $6,000, with interest at seven per cent per annum, payable five years from date, and on which note the interest for 1893 had not been paid. Samuel was also owing his father, Seth, a note, dated October 22, 1892, due one year after date, for the principal sum of $3,500, with interest at six per cent per annum. Whether there was any interest due and unpaid on this note does not appear. On February 3, 1894, Samuel sold and conveyed said farm to his father by warranty deed for the sum of $10,700, which consideration was made up of the Hodge note, principal and back interest for 1893, all of which the father assumed and agreed to pay, and for the balance the father agreed to turn over all notes and accounts he had against Samuel. The deed from Samuel contained this provision: "This deed is made subject to a certain mortgage, dated in 1892, wherein Lewis J. Hodge is mortgagee, for the sum of $6,000, at seven per cent interest, said sum being due in five years after date, and being part of said consideration." The parties also at the same time signed a separate written agreement, wherein they recited that Samuel had sold to Seth one hundred and seven acres, more or less, for $100 per acre; that Seth was to assume the mortgage of $6,000, given to L. J. Hodge, of Wenona, Illinois, and that for the remainder of said payment, Seth was to turn over all notes and accounts he had against Samuel, in full to date. The agreement then described the land, and Seth therein further agreed to pay the interest on the $6,000 mortgage for 1893. The principal sums of said assumed mortgage and surrendered note amounted to $9,500. The back interest on said notes would nearly bring the total up to the $10,700 called for by the deed, and the written agreement implies there were other notes and accounts held by the father against Samuel, which were to complete the consideration for the deed. On the same day Seth gave Samuel another paper, bearing that date and signed by Seth, the body of which reads as follows: "This is to certify that I have received of Samuel R. Ingram all moneys and accounts in full to date." On

the same day Seth and his son, Samuel, also executed another written instrument, by which Seth leased said lands to Samuel for five years, beginning March 1, 1894, and ending March 1, 1899. As rent, Samuel agreed to deliver two-fifths of the corn and oats, and also to pay $50 a year for the grass land, orchard, garden and building. No proof was introduced that in any way attacked these transactions. The consideration was adequate; both parties were competent to transact the business, and great pains was taken to have the papers fully express their agreements. By those papers Samuel parted with his land, and then leased it from his father for five years for an adequate rent. In return for his land his debts to his father were canceled, and provision was made that his father should pay the $6,000 Hodge note and mortgage, with the back interest overdue thereon.

The law is well settled in this State that where a grantee in a deed conveying lands upon which there is a mortgage securing a debt, assumes and agrees to pay said debt as a part of the consideration for which the lands are conveyed to him, he thereby becomes personally liable to the mortgagee for the payment of said debt, and may be sued at law for said debt by the mortgagee, and may also be held responsible for any deficiency upon a foreclosure of the mortgage and sale of the premises. Dean v. Walker, 107 Ill. 540; Daub v. Englebach, 109 Ill. 267; Bay v. Williams, 112 Ill. 91; Schmidt v. Glade, 126 Ill. 485; Fish v. Glover, 154 Ill. 86; Hume v. Brower, 25 Ill. App. 130; Way v. Roth, 58 Ill. App. 198. Upon the completion of said transactions of February 3, 1894, Seth Ingram became personally liable to Hodge to pay him at once the back interest, and to pay him the future installments of interest and the principal debt as each should become due. This did not interfere with Samuel Ingram's liability to Hodge. Hodge thereafter had the right to hold both Samuel and Seth liable to him as principal debtors; but as between Seth and Samuel, Seth became the principal debtor, and Samuel a surety, and as between them the mortgaged property became the primary

fund.  If in this state of the case Seth had died, Hodge could have secured the allowance of the claim against Seth's estate; he could have sued Samuel at law and collected from him; he could have foreclosed the mortgage and had a deficiency decree against Samuel and also a deficiency decree against the executor to be paid in due course of administration.  If Samuel had paid all or any part of the debt, either voluntarily or by compulsion, he could have filed a claim therefor against his father's estate and secured its allowance.  In no way could Samuel have been compelled to relieve the estate of his father from the final payment of the debt.  It was only in the event that the land mortgaged and his father's other estate should prove inadequate to pay the debt, that any final loss could fall upon Samuel because of said mortgage debt.

But before Seth's death another transaction occurred between them.  By a warranty deed dated and acknowledged November 30, 1894, and duly filed for record, Seth Ingram conveyed to his son, Samuel, this one hundred and seven acres in La Salle county, and eighty acres in Marshall county, for the expressed consideration of one dollar, said grantor therein reserving to himself the coal underlying said real estate, and the right to mine and remove the same, and reserving to himself and to his estate in case of his death the possession of said real estate for the period of five years from the date of said deed, and so long thereafter as said Seth should live.  Nothing in the evidence assails the validity of this instrument.  Did it effect any change in the rights of the parties as fixed by the previous transactions? It contained no intimation that the conveyance was subject to the Hodge mortgage, or that Samuel was to pay it.  On the contrary, by the use of a statutory deed, Seth covenanted with Samuel that he was lawfully seized of an indefeasible estate in said premises in fee simple, and that they were then free from all incumbrances.  R. S., 1874, C. 30, Sec. 9.  By this instrument he again bound himself to pay the Hodge mortgage resting upon said La Salle county lands.  The only change that we conceive this last deed made in the relations of

the parties, is that from the time of the delivery thereof the mortgaged property was no longer, as between Samuel and Seth, the primary fund. Hodge could still proceed against both Samuel and the land, but Seth had no further right to have the debt paid out of the land. As between Samuel and Seth the latter was required by the covenant in the last deed to keep the land free from prior incumbrances.

We have thus far considered the case only in the light of the instruments which passed between the parties. But there is oral evidence in the record explaining the last deed. Seth Ingram, at the same time he had that deed prepared, also had several other deeds drawn running to other of his children and grandchildren, conveying to them other real estate, and with the like reservation of possession to himself and to his estate. He employed for this purpose a competent solicitor, and explained to him quite fully what he was doing and the motives which prompted him. He did not convey all his real estate to his children and his grandchildren, but reserved what he considered sufficient to pay all his debts, and he enumerated his debts to his solicitor, and described this $6,000 mortgage as one of the debts which he had to pay, and for the payment of which he considered the property he still retained was amply sufficient. The solicitor in question had previously drawn Seth Ingram's will, and at the making of these deeds, Seth explained to him that he had been induced to make these deeds to his children and grandchildren, by the fact that some of his children were threatening to fight his will, and had said the old man was not competent to do business, and he said that he had decided to show them that he was competent by making such a disposition of his property by deed as he chose. This oral evidence was objected to by appellant, and no ruling was made by the court below upon its competency. As the oral testimony leads to no different conclusion from that to be drawn from the papers, but is merely explanatory, we see no impropriety in its consideration by the court. The opinion, however, of the trial judge printed in appellee's brief, shows that he did not treat the oral testimony as competent.

By an amendment to his petition in the Probate Court, appellee charged that the executor of the estate of Seth Ingram refused to pay the annual interest on said $6,000 mortgage, and that on March 19, 1896, appellee paid the same in the sum of $420. This allegation was proved. Under the principles above stated this gave appellee a clear right to an order for the payment to him of the $420, as a seventh class claim, and such order was entered. The remaining question is whether he was entitled to the further order for the payment of the principal and future interest by the executor without having himself paid the debt. It is clear that if he had paid off this mortgage, he could have compelled the allowance of the debt in his favor. But Hodge was not bound to incur the expense of proving the debt as a claim against the estate. He had a right to look to Samuel and to the land, and may have considered that security sufficient for his purposes. If, however, the claim was not in some way exhibited to the Probate Court within two years from the granting of letters testamentary, as provided by sections 60, 61 and 70 of the administration act, Samuel would be left to pay the debt, or to suffer his land to be sold for its payment, without recourse against his father's inventoried estate. Courts, when acting under equitable rules, as here, do not usually require unnecessary acts. If Samuel had paid this debt and then filed his claim therefor against the estate, that step, while perhaps seriously embarrassing him, would not have benefited the estate. Its liability would not thereby be increased or diminished. It could make no difference to the estate whether the claim was filed in the name of Hodge or Samuel R. Ingram. By the course appellee pursued he brought Hodge and the executor and all the heirs before the court, and there obtained an adjudication binding upon them all, that the estate must pay this debt in due course of administration as a seventh class claim to Hodge, or to himself if he first paid it. We think appellee had a right to pursue this course, and thereby to cause the claim to be exhibited to the court, and the liability of the estate to be fixed before

the end of the two years. Equitable results were reached, and such considerations prevail in the administration of estates. The judgment of the Circuit Court will therefore be affirmed.